IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Ralph Beasley, | Case No. 3:05CV7262 |
| Plaintiff, | |
| v. | ORDER |
| Khelleh Konteh, *et al.*, | |
| Defendants. | |

This is a civil liberties case. Plaintiff Ralph Beasley is a convicted murderer serving a prison term in the Toledo Correctional Institution (ToCI) in Lucas County, Ohio. Beasley contends that defendants, Khelleh Konteh, warden of ToCI, and Reginald A. Wilkinson, director of the Ohio Department of Rehabilitation and Correction (DRC), are preventing him from converting to Orthodox Judaism.

Beasley claims Konteh's actions interfere with his right to practice religion and therefore violate the First Amendment of the U.S. Constitution and a statute protecting religious exercise by institutionalized individuals. 42 U.S.C. § 2000cc; 42 U.S.C. § 1983.

Pending is Beasley's motion to require prison officials to transport him to an Orthodox Jewish Synagogue for conversion to Judaism.[1] For the following reasons, Beasley's motion shall be denied.

---

[1] No other motions are pending. Beasley filed a motion for a preliminary injunction on June 21, 2005, (Doc. 3) but the parties have not briefed that motion. (The parties have met with the court for numerous conferences during the past year.) On June 30, 2005, Konteh filed a motion to dismiss the case. (Doc. 5). On November 3, 2005, Konteh withdrew his motion to dismiss without prejudice. (Doc. 17).

**Factual Background**

Beasley's complaint requests injunctive relief. Beasley wants certain exceptions from prison rules to accommodate his religion, which he says is Orthodox Judaism.[2] Namely, Beasley wants to grow his beard and sidelocks, even though DRC policy prohibits prisoners from growing facial hair longer than one half inch. Beasley claims prison administrators have repeatedly ordered him to cut his hair and, on other occasions, forcibly cut his hair.

Under Orthodox law, to be Jewish, a person must have a Jewish parent or must convert to Judaism in a specific religious ceremony. So far, Beasley meets neither of those requirements. In a July 28, 2005, letter, Joel S. Beren, chief executive officer of the United Jewish Council of Greater Toledo, stated that, because Beasley is not Jewish, his organization would not provide outreach and pastoral care services to Beasley. (Ex. A). Pastoral care services would resume, the letter stated, if Beasley could provide proof he actually was Jewish. (Ex. A).

Konteh argues that he is not required to provide Beasley with any religious accommodations from normal prison regulations because Beasley is not Jewish.[3]

---

[2] Beasley's complaint has two claims. The first claim invokes 42 U.S.C. § 2000-cc, Protection of Religious Exercise in Land Use and By Institutionalized Persons. The second is under 42 U.S.C.§ 1983, alleging that Konteh's actions violate Beasley's First Amendment rights. Beasley seeks an injunction to prevent defendants from cutting or ordering the cutting of his beard and sidelocks, along with compensatory and punitive damages. The only pending motion is Beasley's motion to require that he be brought to a synagogue so he can convert to Judaism. Konteh does contend, however, in his Status Report, that because he is not violating Beasley's constitutional rights, "dismissal is appropriate." (Doc. 25 at 3).

[3] Konteh states that prison officials are treating Beasley as if he were an Orthodox Jew and now are

Rabbi Richard Garsek is willing to convert Beasley to Judaism, but conversion to Orthodox Judaism requires a Mikvah, a ritual bath needed to effect the conversion. ToCI does not have a Mikvah and the synagogue does not have a mobile Mikvah that Garsek could bring to the prison. Therefore, the only way Beasley could convert to Judaism is if prison officials transported him to an Orthodox Jewish Synagogue with a Mikvah.

Beasley wants prison officials to take him to the Congregation of Etz Chayim, a Toledo Orthodox Jewish Synagogue, so he undergo conversion in the form and manner required by Jewish law. He wants this court to order prison officials to transport him there for that purpose.

Konteh is resisting Beasley's request for transportation to the synagogue on the grounds that the trip would create a serious security risk and disrupt the prison's normal administration.[4] Konteh states he does not oppose Beasley's desire to convert to Judaism, provided that the conversion can

---

not forcing him to cut his beard and sidelocks.(Doc. 28 at 3 ("Even though Plaintiff is not an Orthodox Jew, Defendants are recognizing him as same and have allowed him an exemption from the grooming requirement for his beard and sidelocks."); *see also* Doc. 28, Exs. 1–5 (photos showing that Beasley's beard and sidelocks were not cut)).

[4]
Konteh contends the potential for a security risk and the disruption of normal prison administration are real problems prison officials would experience in accommodating Beasley's request. (Doc. 22 at 7). Specifically,

> The inmate must be: diverted from his institutional job; strip searched; provided with [a] high visibility transport uniform and a change of clothes while in the synagogue; provided with a box lunch; and he must be shackled. Several correctional officers must be diverted from the prison to escort and transport the inmate [to] the synagogue. Security arrangements must be made with the synagogue, and people attending synagogue would need to be secured. The correctional officers must stay with the prisoner until the ceremony is over, strip search Plaintiff again and take him back to prison, where the prisoner and all clothing and other property he took with him must be thoroughly searched.

(Doc. 22 at 7).

3

take place in prison. Konteh argues he is under no obligation to allow Beasley to attend a religious ceremony outside of the prison for any purpose.

Beasley argues he has been taken out of the prison to visit the hospital at times, and that prison staff can use the same security measures on such occasions when bringing him to a synagogue. Beasley argues he is in a Catch-22 situation because prison officials on the one hand refuse to treat him as if he were an Orthodox Jew (because, under Orthodox law, he is not), yet on the other hand frustrate his attempts to convert. While Beasley's argument is undermined by Konteh's contention that prison officials are treating Beasley as if he was an Orthodox Jew, the fact is Beasley cannot – under Orthodox law – become a Jew as is his wish.

## Discussion

The First Amendment prohibits government from making a law "respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend. I. The Fourteenth Amendment imposes the "substantive limitations" of the First Amendment on the states. *Santa Fe Indep. Sch.Dist. v. Doe,* 530 U.S. 290, 301 (2000); *Torcaso v. Watkins*, 367 U.S. 488, 492-93 (1961).

Prisoners do not enjoy the full range of rights as compared to people who are not incarcerated. *Price v. Johnson*, 334 U.S. 266, 284-86 (1948); In re *Wilkinson*, 137 F.3d 911, 914 (6th Cir. 1998); *Holt v. Pitts*, 619 F.2d 558, 560-61 (6th Cir. 1980). Prisoners do, however, benefit from the First Amendment's protection of the right to free exercise of religion. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349-50 (1987); *Cruz v. Beto*, 405 U.S. 319, 322 (1972) (per curiam).

The parties have not found any cases on point regarding an inmate's request for transportation to a synagogue for conversion. This court has not found any cases directly on point either. In the absence of direct case law, Konteh analyzes other cases addressing inmate demands

for transportation to a place outside of the prison for reasons other than to participate in or attend a religious ceremony.

Konteh notes that prisoners do *not* have the right to leave prison to: 1) be present in court at any stage of civil proceedings they bring, *Holt v. Pitts*, 619 F.2d 558, 568 (6th Cir. 1980); 2) attend funerals of relatives, *Merritt v. Broglin*, 690 F.Supp. 739, 741-42 (N.D. Ind. 1988); *Butts v. Wilkinson*, 1998 U.S. App. LEXIS 6063 (March 25, 1998) (unpublished disposition); or 3) visit probate court to satisfy the personal appearance requirement (under O.R.C. § 3101.05(A)) for obtaining a marriage license. *Toms v. Taft*, 338 F.3d 519, 526-27 (6th Cir. 2003).

Thus, prison officials need not affirmatively assist inmates by allowing them to leave prison temporarily to accomplish a lawful objective that implicates a constitutional right, such as the right to marry. *Toms*, 388 F.3d at 524-25. Even more, while an inmate may have a right to engage in a particular activity, prison officials need not affirmatively help the inmate in that regard. *See, e.g., id.* For example, while an unincarcerated person has the right to get an abortion, prison officials need not help an inmate obtain one. *Gibson v. Matthews*, 926 F.2d 532, 535 (6th Cir. 1991).

Additionally, even though the right of citizens to vote is protected by the U.S. Constitution, state statutes disenfranchising convicted felons and felony prisoners from participating in elections are valid. *Romer v. Evans*, 517 U.S. 620 (1996); *Richardson v. Ramirez*, 418 U.S. 24, 54-55 (1974); *Farrakan v. Washington*, 338 F.3d 1009, 1016 (9th Cir. 2003); *Fischer v. Governor*, 145 N.H. 28, 39-40 (2000).

In general, federal courts defer to prison administrators in matters concerning the operations of prisons. *Jones v. N. Carolina Prisoners Labor Union*, 433 U.S. 119, 126-28 (1977); *Block v. Rutherford*, 468 U.S. 576, 584-85, 588, 592 (1984). Thus, a federal court should not – absent

substantial evidence – substitute its judgment for that of the prison administrator. *Jones*, 433 U.S. at 127-32.

In summary, the principles outlined in the cases above provide that: 1) I must respect Konteh's analysis of the administrative and security burdens attendant to Beasley's request; and 2) prisoners do not have a right to leave prison to exercise their constitutional rights because the Constitution tolerates – in the interest of prison administration – limitations on the (constitutional and other) rights of prisoners.

In applying those principles to the attendant case, I must deny Beasley's motion requesting that he be brought to a synagogue. I cannot second guess Konteh's assessment of the administrative and security issues associated with taking Beasley to a synagogue. Neither the Constitution nor federal statutes require Konteh to let Beasley leave prison to participate in a religious ceremony.

I will not, however, dismiss the case. Beasley's complaint requests an injunction to prevent prison officials from cutting his beard and sidelocks. Konteh states prison staff are not cutting Beasley's beard and sidelocks, but Beasley contends otherwise. The law relating to the validity of prison regulations governing inmates' hair length and style represents a body of law that has not, thus far in the case, been briefed. *See, e.g.*, Glenn A. Guarino, 62 A.L.R. Fed. 479 ([v]alidity under federal law of prison regulations relating to inmates' hair length and style) (collecting cases). Therefore, dismissal is not warranted.

**Conclusion**

For the foregoing reasons, it is therefore,

ORDERED THAT Beasley's motion for transportation to a synagogue be, and the same hereby is denied.

A status/scheduling conference is set for June 26, 2006 at 9:30 a.m.

So ordered.

/s/ James G. Carr
James G. Carr
Chief Judge
